# INSURANCE COMPANY OF NORTH AMERICA et al., Appellants, v. P. H. CULLEN et al.

### Division One, November 29, 1911.

1. **EQUITY JURISDICTION: Enjoining Action at Law: Fraud.** Ten fire insurance companies, with each of which the owner of certain property had taken out a separate policy, were sued separately at law upon the policies by the several assignees from the owner of the said property, which was alleged to have been damaged or destroyed. The ten companies then united in bringing this suit in equity to enjoin the actions at law, and to have the policies cancelled for frauds alleged to have been commited by the owner after the fire. It is *held*, upon demurrer, that the jurisdiction of equity cannot in such manner be invoked upon the ground of fraud. The courts of law have already acquired jurisdiction of every question involved in these cases, and there is no longer any excuse for fear that prosecution will be withheld until the defense will be embarrassed from loss of testimony or otherwise.

2. ————: ————: **Full and Complete Justice: Separate Jury Trials.** Each of ten fire insurance companies has a policy with the owner of certain property, and each policy contains a clause limiting the liability proportionately to the "whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property." The ten companies were sued separately at law on these policies, and they then united in this suit in equity to enjoin the actions at law, and to have an apportionment of the loss, and contribution. It is *held* that they cannot thus invoke the jurisdiction of equity on the ground of doing full justice between the companies by protecting them against the inequities likely to occur in the verdicts of different juries upon the same facts. The companies have no common interest in these contracts; the contracts were made at different times, without consultation between the companies, and without any intention that any right or liability should exist between the various companies.

3. ————: ————: **Multiplicity of Suits.** Several fire insurance companies, sued separately at law upon separate policies covering the same property, cannot unite to invoke the aid of equity on the ground of avoiding a multiplicity of suits. There is here no community of interest between the companies in the contracts of insurance, and none of them is liable to more than one suit. It does not lie with the com-

panies to urge that the defendants may be saved a multiplicity of suits. Besides, the prevention of a multiplicity of suits is not an independent source of equity jurisdiction, in a sense that it can create a cause of action where none has ever existed.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*George Robertson* and *Charles B. Obermeyer* for appellants.

(1) The policies are interdependent; each company is interested in the fixation of the true amount of loss; each of the actions at law presents the same questions, questions of law and fact in which each and all of the parties to the petition are equally interested. If the petition is sustained, a multiplicity of suits is thereby prevented. The true amount of loss can thereby be ascertained, and the liability of each company fixed, and the loss apportioned between the several insurance companies. It therefore presents equitable issues; the remedy at law is not adequate. Home insurance Co. v. Clemical Co., 109 Fed. 681; Virginia-Carolina Chemical Co. v. Insurance Co., 113 Fed. 1; Insurance Co. v. Schmidt, 126 Fed. 998; Tisdale v. Insurance Co., 84 Miss. 709; Crawford v. Railroad, 83 Miss. 708; Fuller v. Insurance Co., 36 Fed. 469; Garrison v. Insurance Co., 60 U. S. 19; Pennyfeather v. Baltimore, 58 Fed. 481. On principle see Pomeroy's Eq., sec. 368; Michel v. St. Louis, 112 Mo. 614; Osborne v. Railroad, 43 Fed. 824; Sylvester v. St. Louis, 130 Mo. 323; Biddle v. Ramsey, 52 Mo. 151; Insurance Co. v. Landon, 56 N. J. Eq. 513; Kellogg v. Bank, 42 N. Y. Supp. 379; Garrison v. Insurance Co., 19 How. (U. S.) 312; Waterworks v. Yeomans, L. R. Ch. App. (1866); Railroad v. Implement Co., 57 Fed. 42; Railroad v. Schnyer, 17 N. Y. 592; Bone v. Platt, 72 Hun,

326; Chicago v. Collins, 49 L. R. A. 408; Emigrant Co. v. Guinault, 37 Fed. 523; 4 Joyce on Insurance, secs. 2519-3472; Pomeroy's Equity, secs. 243-275. (2) The petition is not multifarious, nor does it attempt to combine eleven distinct causes of action into one. Insurance Co. v. Virginia, etc., supra; Walker v. Powers, 104 U. S. 345; DeForest v. Thompson, 40 Fed. 375. (3) This proceeding does not deprive the defendants and appellees of the constitutional right of a trial by jury. The petition presents matters of equitable cognizance. This being true, the appellants have the right to resort to a court of equity. The constitutional amendment does not affect the proceedings in equity. Shields v. Thomas, 18 How. 269; Barton v. Barbour, 104 U. S. 126; Insurance Co. v. Virginia, etc., supra. (4) The gravamen of this petition is, that in the action at law complete justice cannot be done. The necessity of ascertaining what the real loss is and apportioning the loss between the insurance companies gives a court of equity jurisdiction. Simpson v. Treat, 126 Fed. 1002; Insurance Co. v. Virginia, etc., supra. (5) Community of interest of the defendant insurance companies in every question of law and fact involved in the controversies presented by this action, the inadequacy of the eleven actions at law to attain the ends of justice, a great inconvenience and the expense for all parties in the determination of the controversies in separate suits, are sufficient grounds to sustain the jurisdiction of a court of equity to prevent a multiplicity of suits. Wyman v. Bowman, 127 Fed. 262; Insurance Co. v. Van Clever, 61 N. E. 94; Lung v. Jackson, 85 Fed. 504; 1 Pomeroy's Eq., sec. 269; DeForest v. Thompson, 40 Fed. 375; Prentice v. Duluth, 58 Fed. 441; Tisdale v. Insurance Co., 84 Miss. 709.

*Avery & Woolfolk* and *Barclay, Fauntleroy & Cullen* for respondents.

(1) The petition is fatally deficient and the demurrer was on that account well taken. There is no contribution among underwriters of fire policies where each contract of insurance contains the American (standard form) stipulation for pro rata liability as to each company, as here appears. Lucas v. Ins. Co., 6 Cow. 638; Turnbull v. Ins. Co., 86 Ky. 230; Deming v. Merchants' Co., 90 Tenn. 306; Fitzsimmons v. Ins. Co., 18 Wis. 234; Brown v. Ins. Co., 77 Md. 64. The early English rule of contribution is changed by the "American clause" now in use, the history of which is sketched in Alliance Assn. Co. v. Insurance Co., 8 La. 121; Peters v. Insurance Co., 5 Serg. & R. 481. (2) Even if there was a right of contribution among the insurers, it would be *res inter alios acta* as to the insured, on the facts here disclosed, when as to him the pro rata liability clause is in force in his policy as to each insurer interested. Each contract is separate and independent. 1 Pomeroy, Eq. Jur., p. 163, sec. 178; Koob v. Ins. Co., 113 Ky. 360; Good v. Ins. Co., 43 Ohio St. 394. (3) The loss insured against having occurred, each plaintiff in the suit at bar has a plain, adequate and complete remedy at law if sued on its own policy (even if the policy is avoidable for fraud), and hence there is no lawful ground to apply equity jurisdiction and thereby to deprive the insured of trial by jury on any issues arising under the policy. Ins. Co. v. Hoover Co., 173 Fed. 888; Imperial Ins. Co. v. Gunning, 81 Ill. 236; Lumber Co. v. Hayward, 20 Fed. 425; Ins. Co. v. Morlman Co., 73 Fed. 68. (3) Where an action at law is pending, involving the identical subject of litigation sought to be raised by later suit in equity, the court should decline to entertain the latter, since where matters are subject to concurrent jurisdiction that which first attaches should go on to the close. Smith v. McIver, 9 Wheat. 532. This rule

applies to cases of jurisdiction concurrent at law and in courts of equity. 1 Pomeroy, Eq. Jur., sec. 179; Connell v. Yost, 62 W. Va. 66; Pratt v. Northam, 5 Mason, 105. (4) "Multiplicity of suits," on the facts here exhibited, furnishes no ground for the interposition of equity, the effect of which would be to prevent a trial by jury of the issues arising under each insurance policy, after the risk assumed and insured against has merged into a loss. Ins. Co. v. Hoover Co., 173 Fed. 888; Ins. Co. v. Amus. Co., 178 Fed. 519; Scruggs v. Ins. Co., 176 Fed. 226; Turner v. Mobile, 135 Ala. 73; Thomas v. Canning Co., 92 Fed. 422. (5) The petition is fatally deficient in that several causes of action have been improperly united therein (as the demurrer assigns), for even if each company had an equity for cancellation of its own policy, it would have no such equity as to the policy of any other insurer. The jointure of such causes would be illegal and irregular, as appears on the face of the petition for each of such causes would not "affect all the parties to the action." R. S. 1909, secs. 1795, 1800; Dodd v. Hartford, 25 Conn. 238; Insurance Co. v. Turnbull Co., 86 Ky. 230. (6) One of the eleven alleged insurers (the Phoenix Town Mutual) is omitted and is not made a party plaintiff and is not accounted for. It hence could not be included in the "apportionment" of loss, alleged to be so imperative as to form a ground for equitable jurisdiction. This defect of parties is specifically assigned in the demurrer, and is clearly fatal to the suit. R. S. 1909, sec. 1800.

BROWN, C.—The plaintiffs and appellants are ten fire insurance companies named in the petition as follows: Insurance Company of North America of Philadelphia, Allemannia Insurance Company of Pittsburg, American Insurance Company of Boston, Firemen's Insurance Company of Newark, New Jersey,

German American Insurance Company of New York, Insurance Company of the State of Illinois, Michigan Fire and Marine Insurance Company of Detroit, Pennsylvania Fire Insurance Company of Philadelphia, Phoenix Insurance Company of Hartford, Connecticut, Royal Insurance Company of Liverpool, England. The defendants are P. H. Cullen, O. H. Avery, E. B. Woolfolk, T. T. Fauntleroy, Shepherd Barclay and S. J. Rosenthal.

The statements of the petition, so far as they are necessary to the consideration of the questions presented for decision in this case, are substantially as follows: That the ten plaintiffs, together with the Phoenix Town Mutual Fire Insurance Company of St. Louis, Missouri, during the month of April, 1905, issued to one S. J. Rosenthal their several policies to the aggregate amount of eleven thousand five hundred dollars, insuring him against loss or damage by fire to an amount not exceeding the amounts named in their several policies, upon his stock of furnishing-goods, notions, clothing, shoes, hats, caps and other merchandise, while located and contained in the brick building situated at 2137 Franklin avenue in the city of St. Louis, and that on the 9th day of May, 1905, a fire occurred in said premises whereby a portion of the property was partially destroyed. On or about the 19th day of the same month Rosenthal met the representatives of each of the insurance companies at the scene of the fire, and demanded payment from each of them to the full amount of its policy. Thereupon the companies demanded of Rosenthal that he make proofs of his loss according to the terms of the policies. He promised to furnish such proofs, but afterwards neglected and refused to do so; and about the 22d day of June, 1905, assigned the said policies by indorsement in writing as follows: The policies of the Insurance Company of the State of Illinois, the Phoenix Town Mutual, and the Royal Insurance Company

of Liverpool, England, to the defendant O. H. Avery; the policies of the Allemannia Insurance Company, the Michigan Fire and Marine Insurance Company and Phoenix Insurance Company, to the defendant E. B. Woolfolk; and on August 1, 1905, assigned by similar indorsement the policies of the American Insurance Company, the Firemen's Insurance Company, the German American Insurance Company, the Insurance Company of North America and the Pennsylvania Fire Insurance Company to the defendant P. H. Cullen. On the 9th day of August, 1905, Cullen brought his five separate actions at law in the circuit court of Audrain county against the several insurers in the policies assigned to him; on the 10th day of the same month Woolfolk brought his three separate actions at law in the circuit court of Lincoln county on the policies so assigned him; and on the same day Avery brought his three separate actions at law in the circuit court of Lincoln county on the policies so assigned to him. All of said suits are still pending and the defendants have filed substantially identical answers in each. Each of the said policies of insurance contains, among other, the following conditions:

"Reduced Rate Agreement, Eighty per cent. In consideration of the reduced rate of premium charged for this policy, it is hereby mutually understood and agreed that this company shall, in case of loss or damage, be liable for such portion only of the loss or damage as the amount insured by this policy shall bear to eighty (80) per cent of the actual cash value of the property covered by this policy at the time of fire. Provided, however, that if the whole insurance shall be greater than eighty (80) per cent of the value of the property covered, this company shall not be liable for a greater portion of the loss or damage than the amount insured by this policy bears to the whole insurance covering the property at the time of fire.

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy.

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in the case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

"If fire occur, the insured shall give immediate notice of any loss thereby, in writing, to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put in the best possible order, make a complete inventory of the same, stating the quality and cost of each article and the amount claimed thereon; and within sixty days after the fire, unless such time is extended, in writing, by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the inter-

est of the insured and of all others in the property, the cash value of each item thereof and the amount of loss thereon; all encumbrances thereon; all insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire.

"The insured, as often as requested, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath, by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representatives, and shall permit extracts and copies thereof to be made. In the event of disagreement as to the amount of the loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expense of the appraisal and umpire.

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount

hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto.

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court at law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire. Wherever, in this policy, the word 'insured' occurs, it shall be held to include the legal representatives of the insured, and wherever the word 'loss' occurs, it shall be deemed the equivalent of 'loss or damage.' "

The petition further states in substance that if the plaintiffs and the Town Mutual Insurance Company are liable upon said policies to the assignees, which they deny, they are each liable for a portion only of said loss to be ascertained according to the terms and conditions of said policies above quoted, and that in order to do justice "between said companies," and carry out the provisions of the contract, it is necessary that the amount of the loss, the amount of insurance maintained, the per cent that such insurance bears to the value of the property insured, the amount, if any, that the assured is liable to contribute as a co-insurer by the terms of said conditions, should all be ascertained and fixed, and the loss apportioned between each of the insurers and the insured in accordance with the terms of the policies; "that by virtue of the policies, each insurer is interested in the liability of the other and the liability of the assured as a co-insurer; that if these several matters are to be ascertained in eleven different suits at law by different juries through different trials, in one case one set of values might be fixed, in another, another set of

values might be fixed, and in this way one insurance company might be called upon to pay its proportion in one case upon a different ratio than might be fixed in each of the other cases of the other insurers; so that, instead of the insurers, if liable at all, paying in accordance with their covenants, they would pay in accordance with the discordant findings of juries in separate trials, and perhaps in separate tribunals and jurisdictions.

"That this presents a case for the ascertainment of whether any liability at all exists, and, if there shall be any, then for making apportionment of the contribution which each insurer, including the assured as a co-insurer, should bear of the common loss; that this can only be done in a court of equity, where matters of apportionment and contribution are cognizable; and that the several common law actions against the several insurance companies should be enjoined, and the whole matter settled in one suit on the equity side of the court."

The petition then alleges fraud and false swearing committed by Rosenthal since the fire, with reference to the amount of the loss, the disposition of the property remaining and the amount of the salvage, and the suppression and destruction of inventories, schedules and other information thereof, all of which, it is alleged, constitute fraud within the terms of the policies so that each and all become null and void by reason thereof.

That the petitioners are informed and believe that the defendants Fauntleroy and Barclay have already claimed some interest under the assignment of the policies. The prayer for relief is for injunction to prevent the prosecution of the suits pending in Audrain and Lincoln counties; that if any of the petitioners shall be held liable in any amount on the policies that the liability be decreed to be one calling for contribution and apportionment on the part of

each petitioner, together with the Phoenix Town Mutual Insurance Company, in the proportion provided in the policies, including the liability of Rosenthal as a co-insurer; that an accounting be had as to the loss, and the amount for which each petitioner may be liable to plaintiffs in the actions at law, together with the salvage, the amount of insurance, including liability of Rosenthal as a co-insurer; that the policies be set aside and decreed null and void; that the plaintiffs in said actions at law shall not be entitled to recover anything for the reasons set forth in the petition and especially for the failure of Rosenthal to furnish proofs of loss as required by the terms of the policies, and for general relief.

To the petition the defendants filed their general and special demurrer on the grounds:—

"(1)    That the petition does not state facts sufficient to constitute a cause of action.

"(2).    That several causes of action have been improperly united.

"(3)    That the court has no jurisdiction over the person of any of said defendants.

"(4)    That said court has no jurisdiction over the subject of this action.

"(5)    That there is a defect of parties plaintiff, inasmuch as the Phoenix Town Mutual (Insurance Company) of St. Louis, is not a party plaintiff, or defendant."

This demurrer was sustained by the court, and the plaintiffs declining to plead further, it gave final judgment for the defendants. Thereupon the plaintiffs in due time filed their motion in arrest of judgment, which was overruled by the court, and the cause was regularly appealed to this court.

Exceptions were saved by plaintiffs to the orders of the court sustaining the demurrer and overruling the motion in arrest of judgment, by bill of exceptions filed in due time. The question presented in this court

is whether or not the trial court erred in sustaining the defendants' demurrer.

Each of the ten plaintiff insurance companies and the Town Mutual has a separate policy of insurance upon the same property issued to Rosenthal, the owner. Each policy contains a provision that the insurer shall not be liable under it for a greater proportion of any loss than the amount insured by it bears to the whole amount of insurance on the property, whether valid or not. The property having been injured or destroyed by fire, the assignees of all these policies severally brought separate actions of law on each of the policies, in the circuit courts of Lincoln and Audrain counties. The ten plaintiffs (The Town Mutual Company and its policy being omitted) thereupon brought this suit to enjoin the actions at law, to have the policies cancelled on account of frauds alleged to have been committed by Rosenthal after the fire, and which by the terms of each policy rendered it null and void, to ascertain whether any liability exists with respect to said policies, and if there should be any, to make a common apportionment and to determine the contribution which each insurer should make toward the common loss; and to decree that the plaintiffs should not be entitled to recover anything for the reasons set forth and particularly for the reason that Rosenthal did not furnish the insurers with proofs of loss. A demurrer having been sustained to the petition the question is directly presented whether there is anything in the facts of this case to require or authorize the circuit court, in the exercise of its equitable jurisdiction, to forbid the trial of these actions at law by a jury, according to the course of the common law, and to compel the defendants to submit themselves to a trial by the judges, according to the practice of courts of equity. The case is an important one, because, if we may be permitted to adopt the language of the United States Circuit Court of Ap-

peals of this circuit in a similar case (Mechanics' Ins. Co. v. Hoover, 173 Fed. 888, l. c. 890), "If the bill in this case states a cause of action cognizable in equity, it is plain that the days of jury trial in insurance litigation are numbered, as there are extremely few insurance losses not covered by at least two or more policies in different insurance companies. In view of the great number of actions to recover losses upon policies of insurance heretofore triable at law, any decision which would strike down this jurisdiction and transfer the whole litigation to courts of equity ought to be founded upon the soundest reason and declared only after careful consideration." It is sought by the appellants to found the equity jurisdiction which they invoke in their petition upon two grounds. 1. That the case involves the issue of fraud, of which courts of equity have jurisdiction concurrently with the courts of law. 2. That in the exercise of equity jurisdiction in the form in which it is here invoked, a multiplicity of suits will be avoided, and full justice will be done between the several plaintiffs by protecting against such inequalities as may be expected to occur in the verdicts of different juries upon the same facts.

. I. It is not claimed that the fraud charged in the petition would not constitute a full and complete legal defense to the actions upon the several policies; in fact, the petition states that it has rendered the policies null and void. One of the grounds upon which equitable interposition is asked is that suits have already been brought in the courts of this State on them all. These courts have already acquired jurisdiction of every question involved in these cases, and it is sought, by this proceeding, to enjoin them from exercising it. There is no longer any excuse for fear on the part of these plaintiffs or any of them, that prosecution will be withheld until the defense will be em-

barrassed from loss of testimony or otherwise; but a clear case is presented in which the defendants in the suits at law are attempting to transfer to an equitable forum the trial of issues of which jurisdiction has already been acquired at law.

Home Insurance Company v. Stanchfield, 1 Dill. 424, 12 Fed. Cas. 449, was a case of this character in which the complainant sought by bill in equity to secure the cancellation of a fire policy after an action had accrued under it, on the ground that it had been obtained by fraud. In sustaining a general demurrer to the bill Judge DILLON stated, among others, the following reasons for the action of the court:

"(1) The company has a full, plain, and perfect defense to the policy at law, and no reason is shown why a resort to equity is either necessary, expedient, or proper. (2) Action at law on the policy must (as we have seen) be brought in a short, limited time after the loss. In the present case only about seven months remain to the assured, and the bill alleges that he was about to bring suit; the purpose of the present bill is, therefore, manifest, viz.: to force the assured to litigate in equity instead of at law, thereby depriving the party of the right to a trial by jury." Mr. Justice MILLER, concurring, observed: "I am entirely satisfied with the opinion prepared by the circuit judge, both with the result and the course of argument by which that result is attained. I think the turning points of the case are, that the loss had occurred before the bill was filed, and that by reason of the limitation in the policy as to the time of bringing suit, and the allegation that the defendants were threatening to sue at law, there is no danger of indefinite delay, nor is there any other circumstances alleged warranting resort to equity."

There is no reason why the same rule should not be applied to policies of fire insurance as to life insurance, and this point has become too well settled to

admit of controversy in cases involving the class of contracts last mentioned. [Cable v. U. S. Ins. Co., 191 U. S. 288; Phoenix Life Ins. Co. v. Bailey, 13 Wall. 616; Schuermann v. Union Central Life Ins. Co., 165 Mo. 641.] In the last case cited this court said: "The defense of fraud, as set up in this case, against a legal demand, before as after the enactment of section 7890 [R. S. 1899], presented an issue that was properly triable by jury, and the trial court did appellant no wrong in so ruling."

II. Assuming, then, that the fraud and false statements charged in the petition constitute no ground for equitable interference with the actions at law now pending upon the policies, it becomes necessary to consider whether the jurisdiction may be invoked in this case for the purpose of preventing a multiplicity of suits, or of adjusting differences between the plaintiffs themselves. We will, for the purposes of this decision, ignore the fact that under the allegations of the petition, if such differences exist, the Phoenix Town Mutual Company is equally interested with the plaintiffs, and such an adjustment in this case would be impossible without its presence either as a plaintiff or defendant, its absence being unexplained. For anything that appears, the situation, after such an adjustment as is asked by the plaintiffs, would be the same in kind if not in degree as that which exists now. After the liability of the ten plaintiffs had been ascertained by the court, the Town Mutual would still be at the mercy of a jury and might secure a verdict so small that plaintiffs would be humiliated by its success or might suffer a verdict so large that it would wish that it had cast its lot with its associates.

It is plain that the plaintiffs have no common interest in these contracts. They were made at different times, without consultation between the companies, and without the intention that any right or liability should exist between themselves. It is true that in

each policy the liability is limited by the amount of insurance upon the the property, but even this provision refers to no other insurer, but simply to the amount of such insurance as an element in determining the amount of liability upon the particular policy. It is not claimed that should one of these plaintiffs pay the full amount of his policy and another but ten per cent of his, that there would be any contribution or adjustment called for between the two. In fact, upon the face of the policy this feature is emphasized by the provision that in determining the amount for which the insurer shall be liable the nominal and not the effective amount of the insurance shall be taken into consideration. It counts the same whether valid or invalid and whether the insurers are solvent or insolvent. It is only operative between the parties to the policy and creates no different relation than would exist were it provided, without mentioning other insurance, that the insurer should pay one-eighth or one-tenth or any other fractional part of the entire loss. It is used here, not for the purpose of settlement of any controversy, or difference, or relation between the plaintiffs. It can serve but two purposes as to them: (1) to enable them, by clubbing together in one suit, to reduce the cost to each of resisting payment of the loss; (2) to avoid a trial by jury. In the first of these the defendant can have no direct interest. It is a matter purely between the parties to the combination and the governmental agency upon which they have called for assistance; in the second, the real question is whether there is anything in this case that places the defendants outside the pale of the constitutional guaranty of the right of trial by jury.

The claim that the plaintiffs are entitled to a trial in equity to prevent a multiplicity of suits is also without merit. There is no ground stated for fear that any one of them will be sued more than once, and it is this one suit against each of them on its contract of

insurance that they have sought to combine to avoid. As we have seen, under these contracts it is not the concern of any one of them how many times the others are sued, and the defendants have not called upon them for assistance to prevent a multiplicity of suits by them. We cannot more clearly express our opinion upon this question than by using the language of the United States Circuit Court of Appeals of this circuit in Mechanics' Ins. Co. v. Hoover, supra, wherein it said:

"But it is also urged that complainants have a right to file this bill in equity in order to save a multiplicity of suits. The phrase 'multiplicity of suits,' in connection with the jurisdiction of courts of equity, has often been carelessly used, but, it seems, never more so than in this proceeding. Each of these complainants were sued by the Distilling Company at law. In order to save the Distilling Company from prosecuting nineteen different suits at law, complainants urge that they may bring this action in equity. There are two reasons why the rule in regard to saving a multiplicity of suits as applied to matters of equity jurisdiction may not be invoked in this proceeding.

"First. There can be no claim that any complainant is saved from a multiplicity of suits by the maintenance of this action in equity. The Distilling Company is not in court asking it to take jurisdiction of its suits against the insurance companies in order to save it, the Distilling Company, from a multiplicity of suits against it or by it. It does not rest with the complainants to urge as a foundation for their suit that the defendant, the Distilling Company, may thereby be saved a multiplicity of suits. [Equitable Life Assurance Society v. Brown, 213 U. S. 25.]

"Second. The complainants, in our opinion, present no cause of action, either legal or equitable, against the Distilling Company by the allegations of

their bill. The prevention of a multiplicity of suits is not, considered by itself alone, an independent source of jurisdiction in equity, in such a sense that it can create a cause of action where none had ever existed.''

Upon another point which has been suggested by the plaintiffs in this suit the same court in the same opinion says: ''If the peculiar and special duty of juries to pass upon property values in matters at law may be taken away and given to a chancellor, merely because different juries may render different verdicts upon like or similar facts, then trial by jury in civil actions no longer exists.''

That case has been cited and approved, with an interesting citation of authorities, in Scruggs v. American Cent. Ins. Co., 176 Fed. 224, and is also followed in Smith v. Ins. Co., 178 Fed. 510. The law as now administered in the federal courts seems to be settled by these cases. We have carefully read the authorities cited by appellants and have seen nothing to shake us in the views we have expressed.

For the reasons stated the judgment of the circuit court is affirmed. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.